UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

c

| | |
|---|---|
| JESSE DAVID CHRISTIAN,<br>Plaintiff | CIVIL ACTION NO. 1:15-CV-0495;<br>SEC. P |
| VERSUS | CHIEF JUDGE DRELL |
| SGT. ANDERSON, ET AL.,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

On March 2, 2015 *pro se* prisoner Jesse David Christian ("Christian") filed a complaint pursuant to 42 U.S.C. § 1983, complaining of excessive force and deprivation of medical care. (Doc. 1). In amending his Complaint, Christian voluntarily dismissed the following defendants: McFarland, Lucas, Glover, Smiley, Horne, Keith, Pollock, Walker, Jones, Gaskil, Fitzgerald, Singleton, Fobbs, Brunsons, Kuplesky, Keiffer, Richardson, and Spence. Christian stated that he wished to proceed with claims against Sgt. Scotty Anderson ("Anderson"), Corrections Corporation of America ("CCA"), and Medical Director Daniel Marr ("Marr"). Christian seeks monetary relief and injunctive relief in the form of an order directing Defendants to provide him with medical treatment for all injuries. (Doc. 1).

In their Motion for Partial Summary Judgment, Defendants seek dismissal of all claims against Marr. Marr contends that he did not personally evaluate or treat Christian and, furthermore, that Christian received appropriate treatment for the

injuries associated with the November 3, 2013 incident.[1] Christian filed for a Motion for Extension to submit his Response to Defendants' Motion for Partial Summary Judgment, which was granted. Christian did not file a Response.

I. Background

Christian is an inmate in the custody of Louisiana's Department of Public Safety and Corrections ("DOC"), and was incarcerated at Winn Correctional Center ("WNC") when he filed his Complaint. Christian alleges that on November 3, 2013, Case Manager Rogers gave Christian a pass to proceed to the count room to meet with Chief of Security Virgil Lucas. While walking back to his housing unit, Christian encountered Sgt. Anderson. Christian states that he informed Sgt. Anderson that he had a pass to be on the prison walk, but that Sgt. Anderson ordered him to put his hands behind his back and put restraints on him. Christian states that Sgt. Anderson was aware that restraints were not to be used on Christian due to handicaps from prior injuries. Christian states that he informed Sgt. Anderson that he would have problems walking with the restraints, but that Sgt. Anderson replied by saying he did not care, and then slammed Christian on the concrete face first while still restrained.

Christian states his head was split open, that it looked like he had been "beaten to a bloody pulp," and that he had to be taken to the hospital for his severe injuries. Christian further alleges that WNC medical staff refused to give him pain medication

---

[1] Christian claims that he sustained injuries when Defendant Anderson pushed him to the ground. In their Motion for Partial Summary Judgment, Marr acknowledges Christian's claim but states that it was a slip and fall.

prescribed by the hospital, and was sent back to his unit instead of being kept under a 24-hour observation at the infirmary.

Christian alleges that since the incident, he has head pain, difficulty remembering things, blurred vision, and constant dizziness. Christian states that Nurses Fobbs and Brunson have refused him medical treatment; that he informed Medical Director Marr and Dr. Kuplesky that, since the incident, his back hurts badly; and they have refused his requests for medical treatment. (Doc. 1). He states he has also complained of hip pain, vision issues, and neck pain, but has been refused medical treatment. (Docs. 1, 8).

In his Amended Complaint, Christian dismissed many of the initial Defendants, but wished to proceed against Sgt. Anderson, Daniel Marr, and CCA. He claims that Marr refused to allow him to see a doctor following his head injury. (Doc. 8). Specifically, Christian claims that every time he submitted a sick call request, a nurse would screen him but would not refer him to a doctor, and that Marr refused to schedule an appointment with either the facility doctor or an outside specialist. Christian claimed that Marr told him that "tele-med" was down and would keep putting him off, in order to cut inmate medical costs. (Id.).

II. Law and Analysis

A. Standards governing the Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[2]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

B.  **Deliberate Indifference**

Christian claims that Marr was deliberately indifferent to his medical needs. Christian is a convicted inmate. Therefore, his claim for inadequate medical care is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail, a plaintiff must

---

[2] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

4

establish that the response to a prisoner's medical needs was sufficiently harmful to evidence deliberate indifference. See id. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. See Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). It occurs when a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 837-40 (1994). Furthermore, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, Tx., 245 F.3d 447, 459 (5th Cir. 2001).

The Court must balance the needs of prisoners against the needs of the penal institution in light of medical necessity, not desirability. Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981). The fact that a plaintiff does not believe his medical treatment is as good as it should be is not a cognizable complaint. Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Disagreement with the medical treatment does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); see also Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

Furthermore, to the extent a plaintiff wishes to sue a medical director or other official in his supervisory capacity, the plaintiff must allege facts that demonstrate either personal involvement or the implementation of unconstitutional policies. Specifically, a supervisory official "may be held liable only if: (1) they affirmatively

5

participate in acts that cause constitutional deprivation;, or (2) implement unconstitutional policies that causally result in plaintiff's injury." Baker v. Putnal, 75 F.3d 190, 199 (5th Cir. 1996); see also Davidson v. Wilkinson, No. 10-CV-1458, 2010 WL 5507921, at *1 (W.D. LA. Dec. 13, 2010).

As noted above, Christian did not oppose Defendants' Motion for Partial Summary Judgment, and did not present evidence in support of his claim. Other than the unsupported claims in Christian's original and amended Complaints, there is nothing which supports his allegations that he has been subjected to deliberate indifference. Defendant Marr's uncontested statement of undisputed facts and the affidavits submitted in support of their motion reflect that Christian received adequate medical care following both incidents.

In their undisputed statement of material facts, Defendant indicates that Christian's medical record prior to his arrival at WNC contained evidence of problems with walking, gait, and neck and back pain. (See doc. 36; doc. 17, pp. 41-52; 57-58; 66-67; 74-79/377). Christian had received a spinal laminectomy and cervical decompression for cervical stenosis in about 2009. (See doc. 17, pp. 66-68/377). Additionally, Christian's November 16, 2012 transfer record from the DOC indicated several medical conditions, including: history of deep vein thrombosis, bilateral lower extremity weakness, history of bipolar disorder, cervical myelopathy status post laminectomy, chronic pain, hepatitis C, long history of substance abuse, hypertension, and muscle spasms. (Doc. 17, p. 58/377).

Defendants additionally showed that a medical emergency was declared following Christian's fall on November 3, 2013. Christian received a laceration above the left eyebrow with no bruising (upon initial evaluation) and moderate swelling. (Doc. 17, pp. 197-199/377). Christian was evaluated by a nurse who cleaned the laceration and applied a dressing. (Id.). The medical plan was to notify the medical doctor and to perform neurological checks until Christian went to the hospital. (Id.). Records indicate that Christian's vital signs were monitored and Dr. Singleton was notified. (Id.). The physician ordered that Christian be sent to Winn Regional Medical Center for evaluation of his head injury. (Doc. 17, p. 241/377). Emergency room personnel at Winn Regional applied sutures to the laceration, prescribed medication, and directed that the sutures be removed after 7-10 days. (Doc. 17, p. 271/377). Christian submitted a sick call on November 8, 2013 complaining of pain in his back and neck and blurry vision as a result of the fall. (Doc. 17, p. 193/377). Christina was seen on November 12, 2013, where he was evaluated for complaints of chronic back pain and lower leg pain (Doc. 17, pp. 194-95/377). The nurse referred him to the medical doctor who prescribed medications. (Doc. 17, pp. 195, 240/377).

The next time Christian filled out an Inmate Request Form was on November 22, 2013 to ask for orthopedic shoes. (Doc. 17, p. 192/377). However, the next time Christian requested treatment for pain and blurry vision was not until January 8, 2014. (Doc. 17, pp. 227, 236/377). Christian refused a sick call. (Doc. 17, pp. 238-39/377).

On March 6, 2014, during a routine follow-up in the Chronic Care Clinic for hypertension and hepatitis C, no complaints or issues were raised. (Doc. 17, p. 15/377). On March 22, 2014, during a mental health visit, Christian complained that he was a "little aggravated with medical because he had neck problems and that he felt he was not getting proper care for his neck." (Doc. 17, p. 291/377). Roughly a week later, on March 28, 2014, Christian filed a sick call complaining of blurred vision. Christian was referred to an optometrist. (Doc. 17, pp. 235-37/377).

On May 30, 2014, Christian again complained of neck and back pain, which the nurse's notes indicated were caused by "multiple car accidents." (Doc. 17, pp. 232-34/377). Christian additionally reported that a "vicious fall" four to five months earlier had "caused new pain that he's familiar with on his neck." (Doc. 17, p. 234/377). Christian was referred to the medical doctor who then requested an outside consultation for those issues. (Doc. 17, pp. 234; 258-59/377).

During the medical evaluation on November 3, 2013 for the initial fall or during his subsequent sick calls on November 12, 2013 and January 8, 2014, Marr did not evaluate Christian. Furthermore, according to WNC procedures, Marr is not involved in medical referrals. (Doc. 36-2). If an inmate files a "sick call" form, they would typically be seen by a nurse within 72 hours. (Id.). The nurse could then refer the patient to the facility's medical doctor if deemed medically necessary, and the facility's medical doctor could request a consultation from an outside physician. (Id.). Marr is not involved in those decisions. (Id.). And as noted above, Christian was referred to the emergency room for the initial fall and to an outside physician when

8

he complained of increased pain in May 2014, and he was seen by medical staff when he made sick calls.

Christian presents no evidence, and the medical records do not show, that Marr refused treatment to Christian or otherwise disregarded his serious medical needs. The medical records show that Christian received treatment following his fall and received follow-up when he made sick calls. And none of the records show Marr had any involvement in those treatment decisions, or prevented Christian from receiving treatment. Nor has Christian presented any evidence of the implementation of unconstitutional policies by Marr. "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Therefore, as Marr is a supervisory official, Marr cannot be held liable in this deliberate indifference claim. Based on Christian's failure to oppose Defendant Marr's motion and to designate evidence in support of his allegations to create a genuine issue for trial, the Court concludes that Defendant Marr is entitled to summary judgment.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion for Partial Summary Judgment (Doc. 36) be GRANTED, and that Plaintiff's claims against Defendant Marr be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with

the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __29th__ day of November, 2016.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge