RECEIVED
MAR 29 2018
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JESSE DAVID CHRISTIAN | CIV. ACT. NO. 15-00495 |
| -vs- | JUDGE DRELL |
| SGT. ANDERSON, ET AL. | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

This matter came before the court for bench trial on October 24, 2017. At the conclusion of the evidence, the parties were asked to submit post-trial briefs. Having heard the evidence and reviewed all filed briefs, we issue the following ruling on the merits.

Plaintiff filed this suit on March 2, 2015, alleging he was the victim of excessive force at the hands of defendant, Sergeant Anderson ("SGT. Anderson" or "Anderson"), while he was incarcerated at Winn Correctional Center ("WCC") in November of 2013. (Doc. 1). Plaintiff's original complaint also named Corrections Corporation of America ("CCA") and 19 other prison employees as defendants. (Id). By amended complaint, Plaintiff voluntarily dismissed all defendants except Anderson, Daniel Marr and CCA. This court granted a motion for partial summary judgment filed by defendants and, thereby, dismissed all claims against defendant Daniel Marr. (Docs. 36, 45, 48). Plaintiff's remaining claims against SGT. Anderson and CCA, excessive force in violation of his Eighth Amendment rights and negligence under Louisiana law, were the subject of the aforementioned bench trial.

A claim by a prisoner for excessive force implicates the Eighth Amendment's prohibition of cruel or unusual punishment. Farmer v. Brennan, 511 U.S. 825 (1994); Siglar v. Hightower,

1

112 F.3d 191, 193 (5th Cir. 1997) citing Hudson v. McMillian, 503 U.S. 1, 7 (1992). In order to show a violation of his Eighth Amendment rights by use of excessive force, a prisoner must demonstrate that, "'force was applied not in a good faith effort to maintain and restore discipline, but rather that the force complained of was administered maliciously and sadistically to cause harm." Rankin v. Klevenhagen, 5 F.3d 103, 107 (5th Cir. 1993); Hudson, 503 U.S. at 6-7. The court will consider the following non-exhaustive factors in determining whether or not a prisoner plaintiff has successfully demonstrated an excessive force claim: (1) the extent of injury suffered; (2) the need for application of force; (3) the relationship between the need and the force used; (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Moss v. Brown, 409 Fed. Appx. 732 (5th Cir. 2010) citing Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998). Finally, the Eighth Amendment requires that a prisoner prove a resulting injury that is more than *de minimis*, though the injury need not be "significant." Gomez v. Chandler, 163 F.3d 921, 925 (5th Cir. 1999); Hudson, 503 U.S. at 9-10.

The court finds that Plaintiff failed, at trial, to carry his burden of proof as described above. Plaintiff's suit alleges that he was "slammed" to the ground by SGT. Anderson in retaliation for Plaintiff's insistence on entering the dining facility to eat. Specifically, Plaintiff testified that he left Birch dormitory and walked toward the main walk on his way to the chow hall. (Doc. 67 at 4:5-7). Plaintiff recalled meeting SGT. Anderson at the entry to the main walk and that Anderson denied him access to the chow hall because the time for Birch unit inmates to eat was concluded. (Id. at 4:7-10). Plaintiff, unsatisfied with Anderson's refusal, reentered Birch unit and spoke with the unit manager, Mrs. Rogers, who issued him a pass to go to the count room. Plaintiff testified that he wanted to go to the count room to find the ranking officer. (Id. at 5:7-13). When Plaintiff arrived at the count room, a female corrections employee, later identified as Kim Canderday

2

("Canderday") explained to Plaintiff that the Captain on duty was "down the walk." (Id. at 5:16-18). Plaintiff testified that, based on this information, he left the count room and began to walk back to Birch unit. (Id. at 5:18-20). On his walk back to Birch unit, he encountered SGT. Anderson again and Anderson asked him why he was on the walk. (Id. at 5:19-22). Plaintiff recalled that, after explaining to Anderson that he had a pass to be out of the unit, Anderson told him to turn around and be restrained, which Plaintiff did immediately. (Id. at 6:1-13).

The uncontroverted testimony concerning what happened next is that SGT. Anderson cuffed Plaintiff and began to walk him toward the medical facility to begin the process of placing Plaintiff in segregation for the offense of aggravated disobedience. Anderson testified that his decision to detain Plaintiff was attributable to Plaintiff's allegedly combative behavior during their second encounter on the walk. Anderson testified that Plaintiff came toward him, in an agitated state and shook his cane at Anderson as he approached him. (Doc. 68 at 17:13-21). Plaintiff and Anderson testified that Anderson handcuffed Plaintiff and began to walk with him toward medical, holding his upper left arm, when Plaintiff fell, hitting his head on the concrete below. (Id. at 18:21 – 20:4). After being taken to the WCC infirmary, Plaintiff was transported to Winn Regional Medical Center, where he was prescribed Keflex and Motrin to treat a head laceration. (Doc. 67 at 20:20 – 21:9). Plaintiff also received sutures, which the prison was instructed to remove after 10 days. (Id. at 21:10-11).

Plaintiff testified that he warned SGT. Anderson, as he was being handcuffed, that he would have difficulty walking while handcuffed. (Doc. 67 at 6:17-20). Plaintiff characterized SGT. Anderson as next trying to "pull" him, despite his warning to Anderson that he was limited in his mobility. (Id. at 7:5-8).

3

The court heard testimony from Douglas Busby, an inmate who witnessed Plaintiff's fall, in which Busby stated that it appeared that SGT. Anderson was expecting too much of Plaintiff, who was widely known to be handicapped. (Doc. 68 at 4:19 – 5:25).

SGT. Anderson testified that, though he was aware that Plaintiff walked with a cane and permitted Plaintiff to retain his cane once he complied with orders to be restrained, he had no expectation that Plaintiff would incur any difficulty in being transported to medical. Specifically, he testified that, had he known of the nature of Plaintiff's handicap and its implications for transport, he would have called for assistance. (Doc. 69 at 21:16-18). Moreover, he denies intentionally harming Plaintiff or transporting him in a way he knew to be dangerous. (Id. at 19-21).

Considering the standard applicable to Plaintiff's Eighth Amendment claim, we find that Plaintiff fails to demonstrate that the motive behind SGT. Anderson's actions was to cause harm. Rather, Plaintiff admits that he was argumentative with SGT. Anderson; essentially "going over his head" to attempt to escape Anderson's instruction, with which Plaintiff disagreed. Given this fact, which is uncontroverted, we find that SGT. Anderson was acting reasonably, in keeping with the need to manage the facility and preserve internal order and security. Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015) citing Bell v. Wolfish, 441 U.S. 520, 547 (1979). While his method was likely negligent, in light of what we deem to be Plaintiff's clear and widely-acknowledged handicap, negligence is not cognizable as an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825 (1994); Hale v. McLean, 250 Fed. Appx. 89 (5th Cir. 2007). Moreover, Plaintiff fails to demonstrate that the force at issue in this case was motivated by an affirmative intent to harm or undertaken with malice. Thus, Plaintiff's federal claim fails to satisfy the central inquiry of excessive force. Whitley v. Albers, 475 U.S. 312 (1986).

Though the court is entitled to dismiss Plaintiff's state law negligence claims, we elect to decide these pendent claims based on our conclusions above and our concern for judicial economy. 28 U.S.C. § 1367(a); United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). Louisiana law recognizes a potential claim for negligence by a prisoner alleging excessive force and such claims are evaluated under the state's duty/risk analysis. Barlow v. City of New Orleans, 241 So.2d 501 (La. 1970). "[P]enal authorities have a duty to use reasonable care in preventing harm after they have reasonable cause to anticipate it." State ex rel. Jackson v. Phelps, 672 So.2d 665, 667 (La. 1996).

Whether or not a duty was breached is a fact question and requires an analysis of whether or not the alleged tortfeasor exercised reasonable care under the particular circumstances of each case. La. Civ. C. Art. 2315, Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La. 1993) (internal citations omitted). In order to establish liability under Louisiana law, Plaintiff must show: (1) the conduct in question was the cause-in-fact of resulting harm; (2) Anderson and CCA owed a duty of care to Plaintiff; the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached. Mundy, 620 So.2d at 813 citing Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La. 1993).

In this case, we find that ample evidence demonstrates that SGT. Anderson's method of transporting Plaintiff was the cause-in-fact of Plaintiff's fall. Roberts v. Benoit, 605 So.2d 1032, 1042 (La. 1991). Louisiana law establishes that both defendants did, in fact, owe a duty of care to Plaintiff as an inmate in their care. Washington v. Gusman, 183 So.3d 510 (La. App. 4 Cir. 2015). Additionally, we find that the facts of this case demonstrate that SGT. Anderson breached the duty of care owed to Plaintiff as a handicapped inmate. The evidence at trial showed that Plaintiff's

handicap required him to walk with a cane and that he was using the cane at the time of the incident in question. (Doc. 69 at 2:22-24). Thus, we find the handicap was evident and that, in light of Plaintiff's handicap, SGT Anderson failed to use reasonable precautions in transporting him while handcuffed. Douglas Busby testified that Plaintiff was, in fact, the only inmate at WCC who "walked like that." (Doc. 68 at 5:12-16). In this way, Anderson breached the duty owed to Plaintiff under these circumstances and the harm resulting to Plaintiff is clearly within the scope of protection the duty should provide.

Plaintiff's actions leading up to the incident may, indeed, constitute the basis for contributory negligence. His attempt to supersede Anderson's authority can reasonably be interpreted as insubordination, giving rise to the wide discretion afforded to prisons in maintaining order and security. La. R.S. §§15:828, 829; Bridgewater v. State Through the Department of Corrections, 434 So.2d 383 (La. 1983). The court did not find credible Anderson's testimony that Plaintiff behaved in such a way as to inspire Anderson's fear for his safety. Such version of events is contradicted by Anderson's own testimony that he allowed Plaintiff to retain his cane during the entire event in question. (Doc. 69 at 21:6-15).

Having found that the evidence at trial establishes negligence on the part of SGT. Anderson, we find that CCA is also liable under the applicable theory of respondeat superior as his employer. The negligence at issue was clearly committed within the course and scope of his employment with CCA. La. Civ. C. Art. 2320; Orgeron v. McDonald, 639 So.2d 224, 227 (La. 1994). Additionally, we note that CCA admits that it does not maintain policies regarding the transportation or care of handicapped inmates. SGT. Anderson testified that he did receive at least one training on this issue, but that it is not contained within CCA's written policies. (Doc. 64-1 introduced at trial as Plaintiff's Exhibit 2).

Given the court's finding of defendants' negligence in this matter, it is now the court's duty to fashion an adequate remedy to Plaintiff's state law claim. Although Plaintiff alleges his injury includes the worsening of his pre-existing spinal cord injury, resulting in the loss of strength in his legs, the court does not find that Plaintiff established causation on that claim. Thus, we are left to consider the remedy appropriate to address Plaintiff's fall, head laceration and subsequent recovery.

Under the circumstances, and considering the type and relative severity of the injury in this case, as well as Plaintiff's unremarkable recovery, we find an award of $7500 to be appropriate remedy. *Compare* Le v. Nitetown, Inc., 72 So.3d 374 (La. App. 3 Cir. 2011); Johnson v. State ex rel. DOTD, 946 So.2d 682 (La. App. 3 Cir. 2006); Brister v. Continental Insurance Co., 712 So.2d 177 (La. App. 2 Cir. 1998). No evidence of special damages, including medical, was submitted, so no such damages are awarded herein.

**Alexandria, Louisiana**
**March 29, 2018**　　　　　　　　**DEE D. DRELL, JUDGE**
　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**